UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

SHERRI BAILIN,

       Plaintiff,

vs.

Case No.: _____

ROBERT F. KENNEDY, JR., IN HIS
OFFICIAL CAPACITY AS THE
SECRETARY OF THE UNITED STATES
DEPARTMENT OF HEALTH AND
HUMAN SERVICES,

       Defendant

## **COMPLAINT**

Plaintiff, Sherri Bailin ("Plaintiff" or "Mrs. Bailin"), brings this action against Defendant, Robert Kennedy, Jr., in his official capacity as the Secretary of the Department of Health and Human Services, to obtain injunctive relief for violation of federal law. The specific legal issue before the Court is whether, in contravention of 42 U.S.C. 1395w-22(a)(1)(A), a Medicare Advantage Plan (Aetna) generally can refuse to cover an item covered by Original Medicare and whether Aetna's denial of Plaintiff's request for medical coverage is proper in light of the statute, regulations, and contract.

## I.    **JURISDICTION AND VENUE**

1. This Court has jurisdiction over this action pursuant to 42 U.S.C. §§ 405(g) and 1395ff.

2. Mrs. Bailin is filing suit after a final decision of the Medicare Appeals Council (acting on behalf of the Secretary) denying coverage of her Medicare claim (and, therefore, has exhausted her administrative remedies).

3. The amount-in-controversy is more than $1,960 (42 U.S.C. § 1395ff(b)(1)(E)(i) and 1395ff(b)(1)(E)(iii)).

4. This suit was filed within 60 days of the Secretary's final decision on April 17, 2026.

5. Venue is proper in this district pursuant to 42 U.S.C. § 405(g) because this action is being brought in the Middle District of Florida, where Mrs. Bailin resides.

## II.    PARTIES

6. Mrs. Bailin is an individual and a resident of Bradenton, Florida.  Mrs. Bailin is eligible for Medicare on the basis of age and/or disability as previously determined by the Secretary.

7. Defendant Robert F. Kennedy, Jr. is sued in his official capacity as the Secretary of the U.S. Department of Health and Human Services ("HHS").

## III.    LEGAL BACKGROUND

**Medicare**

8. Medicare is a government program addressing the health needs of the aged and disabled.  Medicare is divided into four parts, two of which are relevant here.

9.      Medicare Part B (*i.e.*, Original Medicare) is a voluntary insurance program run by HHS where participants pay premiums in exchange for coverage of qualifying claims.  Pursuant to 42 U.S.C. § 1395y(a)(1)(A), as interpreted by 42 C.F.R. § 411.15(o), absent special circumstances not present here, Medicare is barred from paying for items that are experimental or investigational.

## Medicare Advantage

10.     Congress thought private parties might offer the benefits of Medicare Part B more efficiently than HHS itself.  Accordingly, Congress created Medicare Part C – a/k/a Medicare Advantage.

11.     Pursuant to 42 U.S.C. § 1395ww-22 (*i.e.*, Medicare Part C), approved private parties (*i.e.*, Medicare Advantage Plans) may offer Medicare coverage to the public in exchange for *per capita* payments by the government.

12.     As a condition of approval, Medicare Advantage Plans, such as Aetna, are required to cover everything covered by Original Medicare.  42 U.S.C. § 1395w-22(a)(1)(A) ("shall provide ... benefits under the original medicare fee-for-service program"); 42 C.F.R. § 422.101(a) ("Provide coverage of ... all services that are covered by Part A and Part B of Medicare").

13.     Absent special permission, not present here, Medicare Advantage Plans, like Aetna, cannot cover anything not covered by Original Medicare.  42 U.S.C. § 1395w-22(a)(3)(A).

## **<u>Appeals of Medicare Claims</u>**

14.    Whether Original Medicare or Medicare Advantage, appeals of denied claims or prior authorization request denials of coverage follow a five-step process.

15.    A claim or prior authorization is submitted and, if coverage is denied, the insured can appeal and the claim is reconsidered by the same denying entity (either Original Medicare or a Medicare Advantage Plan).

16.    If the claim or prior authorization request is still denied, the insured can appeal to a third-party reviewer (either the Qualified Independent Contractor ("QIC") or the Independent Review Entity ("IRE")).

17.    If the claim or prior authorization request is still denied, subject to an amount-in-controversy requirement, the insured can appeal to an Administrative Law Judge ("ALJ").

18.    If the claim or prior authorization request is still denied, subject to an amount-in-controversy requirement, the insured can appeal to the Medicare Appeals Council ("MAC").

19.    If the claim or prior authorization request is still denied, subject to an amount-in-controversy requirement, the insured can bring suit for review in federal court.

20.    Regardless of whether the claim is an Original Medicare claim or a Medicare Advantage claim, the Secretary of HHS is the defendant in a federal suit seeking review of a denial of coverage.  *See* 42 U.S.C. § 1395ff(b)(1)(A).

### IV.   FACTUAL BACKGROUND

**<u>Willis-Ekbom Disease and the Nidra Device</u>**

21.   Willis-Ekbom disease (a/k/a "restless leg syndrome" ("RLS")) is a neurological disorder causing an uncontrollable, often painful, urge to move the legs.

22.   Although symptoms can occur at any time, the onset of symptoms during sleep is particularly detrimental because it prevents those suffering from Willis-Ekbom disease from getting a full night's rest.

23.   The Noctrix Nidra device (a/k/a the Tonic Motor Activation System ("TOMAC")) wraps around each leg and sends electrical signals, through the nerves, that the brain interprets as the legs moving.  This provides relief from the symptoms of Willis-Ekbom disease and allows patients to get more sleep or more complete sleep.

24.   Based on numerous studies, on April 17, 2023, the FDA determined that the Nidra device is safe and effective for treating the symptoms of restless leg syndrome.

25.   As stated in 60 FED. REG. 55,636 (Sept. 26, 2003), the Center for Medicare and Medicaid Services ("CMS") adopts the FDA's conclusions as to safety and efficacy.

26.   The Healthcare Common Procedure Coding System ("HCPCS") provides codes used by insurers and providers, including Original Medicare, to categorize medical claims and prior authorization requests.

27.     HCPCS code E0743 is the code under which the Nidra device is billed.

28.     Only the Nidra device is billed under that HCPCS code.

29.     Between January 1, 2020 and May 31, 2025, 1,116 claims for coverage were submitted to Original Medicare using CPT code E0743, 1,099 of which were approved for coverage on initial determination, for an initial determination approval rate of 98.5%.  As of February 2026, over 10,000 claims have been paid by Original Medicare

30.     Numerous Medicare Advantage plans have covered the Nidra device (including an Aetna plan).

31.     When a claim or prior authorization is submitted for coverage, Medicare makes that determination of coverage in one of three ways: 1) on a case-by-case basis (the vast majority of claims); 2) through issuance of a National Coverage Determination ("NCD") (a published national determination whether to cover or not cover a device/service); or 3) a Local Coverage Determination ("LCD") (in the case of durable medical equipment ("DME") items, a published determination by one of the four contractors who process Original Medicare whether to cover or not cover a device).  *See* 88 FED.REG. 41,633-35 (June 27, 2023) ("The majority of all Medicare Parts A and B claims have overage determined through the claim-by-claim adjudication process.").

**Mrs. Bailin**

32.    Mrs. Bailin is a 71 year old, retired speech pathologist who currently lives in Bradenton, Florida.  Mrs. Bailin is a mother, grandmother, and wife of 41 years to husband Stuart.

33.    In her free time, Mrs. Bailin enjoys swimming and is an avid mahjong player.

34.    Mrs. Bailin has insurance through an Aetna Medicare Advantage Plan.

35.    The document detailing Aetna's obligations under the plan is called the "Evidence of Coverage" ("EOC").

36.    In relevant part, the Aetna EOC states: Chap. 1, Sec. 1.1 "Our plan covers all Part A and Part B services;" Chap. 4, Sec. 2 "Like all Medicare health plans, we cover everything that Original Medicare covers;" Chap. 4, Sec. 2 "We cover all medically reasonable and necessary DME covered by Original Medicare."

37.    Mrs. Bailin has suffered from Willis-Ekbom disease for many years.

38.    In a 2022 sleep study, Mrs. Bailin awoke 56 times in less than an eight (8) hour period during the night.

39.    Mrs. Bailin has tried numerous treatments to address her Willis-Ekbom symptoms, including taking [1]up to four different medications multiple times each night.  Unfortunately, these medications did not provide effective or complete relief for her symptoms.

---

[1] "MAXIMUS" is the name of a private party retained to review denials.

40.    Accordingly, on March 2, 2025, Mrs. Bailin's physician prescribed the Nidra device.

**The Denials Below**

41.    On July 10, 2025, Aetna denied Mrs. Bailin's request for prior authorization based on Aetna's coverage policy and on the grounds that "medical studies haven't proven the NTX 150 Tonic Motor Activation System is helpful for the treatment of your health problem." Mrs. Bailin appealed.

42.    On September 17, 2025, MAXIMUS (the IRE) denied Mrs. Bailin's request for coverage.

43.    The MAXIMUS' decision states: "The rules say that plans must pay for a medical service or item if regular Medicare would pay for it."

44.    Nevertheless, MAXIMUS denied Mrs. Bailin's request for coverage on the grounds of a "paucity of high-quality data, including randomized clinical studies, that establish benefit and long-term clinical outcomes." Mrs. Bailin appealed.

45.    On January 6, 2026, ALJ Jon Smibert denied Mrs. Bailin's request for coverage.

46.    ALJ Smibert's decision states: "An MA organization's health plan must provide coverage for all services that are covered by Part A and Part B of Medicare[.]"

47. Although noting that there was evidence that 98.5% of claims submitted for the Nidra device to Original Medicare were covered, ALJ Smibert found that Aetna was not required to provide coverage.

48. In particular, ALJ Smibert found that Aetna's own policy excluding coverage could be the basis for denial. ALJ Smibert concluded because a manual provision allowed Aetna to not cover things covered by Original Medicare. Mrs. Bailin appealed.

49. On April 17, 2026, the MAC denied Mrs. Bailin's request for coverage. The MAC held that it could not find that Original Medicare was covering the Nidra device in the absence of a regulation, statute, LCD, or NCD mandating coverage.

50. The MAC noted that the Nidra device was on the Original Medicare Durable Medical Equipment Contractor ("DMAC") fees schedule (*i.e.*, how much Original Medicare pays for the Nidra device).

51. The MAC noted that the DMAC had been paying for the Nidra device since 2024.

52. The MAC noted that 98% of claims submitted to Original Medicare for the Nidra device were paid (referred to by the MAC as "medical literature").

53. The MAC noted that other Medicare Advantage Plans have covered the Nidra device.

54. The MAC described this evidence as "circumstantial" evidence of coverage.

**CAUSES OF ACTION**
**COUNT I**
**Violation of 5 U.S.C § 706(2)(A)**
(arbitrary and capricious, abuse of discretion, not in accordance with law)

57.    Paragraphs 1-54 are incorporated by reference as if fully set forth herein.

58.    Pursuant to 42 U.S.C. § 1395w-22(a)(1)(A), Plans MUST cover everything covered by Original Medicare.

59.    The Secretary, through the MAC, cannot alter or narrow the statute passed by Congress either through a manual provision or by adding limiting words to the statute.

60.    The Secretary failed to properly apply the statute passed by Congress.

61.    In light of the undisputed evidence of Original Medicare's coverage of the Nidra device, the Secretary's denial of coverage is inconsistent with the statute and the Secretary's duties thereunder.

62.    Neither the Plan (Aetna) nor the Secretary can represent to insureds that a Medicare Advantage Plan covers everything covered by Original Medicare in order to induce insureds to sign up for Medicare Advantage Plans only to later decline coverage of things covered by Original Medicare.

63.    Mrs. Bailin has a right to coverage of everything covered by Original Medicare, including the Nidra device.

64.    Based on the foregoing, Plaintiff asks the Court to reverse the Secretary's Decision as arbitrary and capricious, an abuse of discretion, and

otherwise not in accordance with the law, and issue an order directing the Secretary to order Aetna to issue a prior authorization for the device that is the subject of this case and direct Aetna to make appropriate payment for the corresponding claim.

### COUNT II
### Violation of 5 U.S.C § 706(2)(C)
(in excess of statutory jurisdiction, authority, or limitations or short of statutory right)

65.    Paragraphs 1-54 are incorporated by reference as if fully set forth herein.

66.    Based on the foregoing, Plaintiff asks the Court to reverse the Secretary's Decision as in excess of the Secretary's authority and limitations and short of Plaintiff's statutory rights and issue an order finding that the Nidra device is Medicare-covered durable medical equipment and direct Aetna to issue a prior authorization and make appropriate payment for the claim that is the subject of this case.

### COUNT III
### Violation of 5 U.S.C § 706(2)(E)
(not supported by substantial evidence)

67.    Paragraphs 1-54 are incorporated by reference as if fully set forth herein.

68.    Based on the foregoing, Plaintiff asks the Court to reverse the Secretary's Decision as not supported by substantial evidence and issue an order finding that the Nidra device is Medicare-covered durable medical equipment and

direct Aetna to issue an authorization for the device that is the subject of this case and to make appropriate payment for the corresponding claim.

**IV.PRAYER FOR RELIEF**

WHEREFORE, Plaintiff asks that this Court:

(1)    Enter an order directing the Secretary to order Aetna to issue a prior authorization for the device at issue in this case; and

B.  Award attorney's fees and costs to Plaintiff as permitted by law; and

C.  Such further and other relief this Court deems appropriate.

Dated:  June 9, 2026                      Respectfully submitted,

*/s/ Amy L. Drushal*

AMY L. DRUSHAL, **Lead Counsel**
Florida Bar No. 546895
Primary E-Mail: adrushal@trenam.com
Secondary E-Mail: kkovach@trenam.com
101 East Kennedy Boulevard, Suite 2700
Tampa, Florida 33602
Telephone: (813) 223-7474
Facsimile: (813) 229-6553
*Attorneys for Plaintiff*